UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 3:10CV317 |
| PLAINTIFF, | : | |
| v. | : | Judge Timothy S. Black |
| $1,111,120.00 IN U.S. CURRENCY | : | |
| $156,071.00 IN U.S. CURRENCY | : | |
| $62,743.65 IN U.S. CURRENCY, | : | Hearing Requested |
| DEFENDANTS | : | |

## MOTION OF CLAIMANT MICHAEL B. WIESER AND CLAIMANT FRATERNAL ORDER OF ORIOLES 193 TO DISMISS THE COMPLAINT, FOR JUDGMENT ON THE PLEADINGS, AND FOR RETURN OF THE DEFENDANT PROPERTY FORTHWITH

Claimant Michael B. Wieser and Claimant Fraternal Order of Orioles 193 respectfully request that the Court grant them a judgment on the pleadings under Rule 12(c), Fed.R.Civ.Pro. Claimants request that, based on the pleadings, the Court:

1.  dismiss the Complaint with prejudice for failure to state a claim on which relief can be granted, and

2.  dismiss the Complaint with prejudice for lack of subject matter jurisdiction over the defendant property, and

3.  dismiss the Complaint with prejudice for the unreasonable, unconscionable, unfairly prejudicial, and unconstitutional delay of the United States apparent in the Complaint and record, which has denied Claimants their Fifth Amendment rights to due process; and

4.  grant Claimants a judgment on the pleadings; and

1

5. order the United States to return the Defendant property to Claimants forthwith.

The retention of the Defendant property since its seizure on January 27, 2010 is presumptively prejudicial and the United States has not diligently pursued the parallel criminal investigation.

Claimants request a hearing on this motion.

## Memorandum

Claimants incorporate the facts and arguments they made in their initial motion to dismiss and for judgment on the pleadings (R. 11, Motion) and ask the Court to reconsider them in light of the arguments in this motion relating to unreasonable, unconscionable, unfairly prejudicial, and unconstitutional delay.

The United States has retained the Defendant property and delayed resolution of this civil forfeiture case while not diligently pursuing the parallel criminal investigation.  The United States has denied Claimants their rights not to be deprived of property without due process of law.

Claimants request that the Court conduct a hearing to elicit from the government the facts resulting in the delay which the Court needs to applying the law regarding due process.

<u>The timeline of events in this case</u>

    10/09 – 01/10  Ohio Department of Public Safety agents conduct undercover investigation for possible gambling violations at Bill's Open Door bar owner by Mr. Wieser.

    01/27/10  State agents execute a search warrant at Bill's Open Door bar and in doing so obtain and execute a second warrant for the second floor of the building from which they seize most of the defendant funds (R. 1 Complaint).

2

| | |
|---|---|
| 03/08/10 | U.S. Internal Revenue Service re-seizes the funds from the Ohio Department of Public Safety which had seized them from Claimants (R.1 Complaint). |
| 08/11/10 | U.S. Attorney files a civil forfeiture Complaint against the defendant funds (R. 1 Complaint). |
| 09/23/10 | Claimant Mr. Wieser and Claimant Fraternal Order of Orioles 193 file Claims to the defendant funds and contest their forfeiture (R. 4, R. 5 Claims). |
| 12/10/10 | Claimants file Answers to the Complaint (R. 6., R. 7 Answers ). |
| 02/04/11 | Claimants file Motion for Judgment on the Pleadings and To Reassign Case to Cincinnati (R. 11 Motion For Judgment). |
| 02/08/11 | Minute Entry of telephone pretrial conference held on 02/08/11 during which Claimants objected to the stay the United States requested. |
| 02/24/11 | United States files Motion to Stay Proceedings (R. 14, R. 15 Motion to Stay). |
| 02/25/10 | United States files Motion for Extension of Time to File Reply to R. 11 (R. 16 Motion for Extension). |
| 02/28/10 | Court enters Order granting extension (R. 17 Order). |
| 03/04/10 | United States files Response to Claimants' Motion R. 11 (R. 19, R. 20 Responses). |
| 04/12/11 | Court enters Order denying Claimants' Motion R. 11 (R. 21 Order). |
| 04/12/11 | Court enters Order granting stay (R. 22 Order). |

| | |
|---|---|
| 07/01/11 | United States files ex parte in camera status report about parallel criminal investigation (R. 23 Status Report). |
| 10/12/11 | United States files ex parte in camera status report about parallel criminal investigation (R. 24 Status Report). |
| 01/05/12 | United States files ex parte in camera status report about parallel criminal investigation (R. 25 Status Report). |
| 04/10/12 | United States files ex parte in camera status report about parallel criminal investigation (R. 26 Status Report). |
| 05/04/12 | Meeting between Counsel for Claimants and United States to discuss resolution of criminal investigation and civil forfeiture. United States agrees to supply counsel for Claimants IRS spreadsheets showing alleged income from machines. |
| 7/12/12 | United States files ex parte in camera status report about parallel criminal investigation (R. 27 Status Report). |
| 07/16/12 | Meeting between Counsel for Claimants and United States to discuss resolution of criminal investigation and civil forfeiture. United States affirms it will supply counsel for Claimants IRS spreadsheets showing alleged income from machines. |
| 09/01/12 | Claimants make formal written proposal to resolve the criminal investigation and civil forfeiture to United States and it is declined. |
| 10/11/12 | United States files ex parte in camera status report about parallel criminal investigation (R. 28 Status Report). |

| | |
|---|---|
| 01/10/13 | United States files ex parte in camera status report about parallel criminal investigation (R. 29 Status Report). |
| 04/11/13 | United States files ex parte in camera status report about parallel criminal investigation (R. 30 Status Report). |
| 07/10/13 | United States files ex parte in camera status report about parallel criminal investigation (R. 31 Status Report). |
| 07/17/13 | Court files notice of hearing set for 07/23/13. |
| 07/18/13 | AUSA Knight informs counsel for Claimants that she will replace AUSA Tabacchi in the criminal investigation. |
| 07/23/13 | Minute entry of telephone status conference held 07/23/13. |
| 08/06/13 | Minute entry of in-person status conference held 08/06/13. |
| 08/06/13 | United States sends counsel for Claimants summary of gambling law violations it alleges were committed. |
| 08/19/03 | Counsel for Claimants sends memo to United States on issues raised by 08/06/13 United States' summary and related issues. |
| 09/09/13 | Minute entry of telephone status conference held 09/09/13. |
| 09/30/13 | Minute entry of telephone status conference held 09/30/13. |
| 09/30/13 | Court files notation order vacating order granting stay (R. 22 Order). |
| 10/16/13 | Meeting between counsel for Claimants and United States at which United States announces it is commencing an investigation by the Ohio Attorney General and by the IRS Exempt Organizations Unit of both Fraternal Order of Orioles 193 and MONEY, INC. about their compliance with Ohio and federal law for such organizations. |

| | |
|---|---|
| 11/18/13 | Meeting between counsel for Claimants and United States. |
| 11/19/13 | Joint Rule 26(f) report (R. 32 Report). |
| 11/26/13 | Minute entry of telephone preliminary pretrial conference held 11/26/13. |
| 11/26/13 | Calendar Order (R. 33 Order). |
| 12/06/13 | Court files notation order denying renewed motion to transfer venue. |

The facts in this case

The Complaint (R.1, Complaint) sets out the factual background of this case according to the United States. In substance, those facts are alleged to be as follows.

The investigation of Mike Wieser for an alleged gambling business was originally an investigation by the State of Ohio Department of Public Safety. The investigation of an alleged gambling business was of two locations:

1. Bill's Open Door, the "local bar" owned "for approximately 28 years" by Mr. Wieser in Middletown, Ohio ("the bar").

2. The Middletown Orioles Nest #193 (the "Orioles") and Middletown Orioles Nest Energizing Youth ("MONEY"), the "charity of which Bill's Open Door is registered to conduct sanctioned games on their behalf for fund-raising purposes."

The United States alleged in that affidavit that the defendant funds were forfeitable under the federal interstate gambling statute 18 U.S.C. § 1955(d).

> "[S]ince October 2009, the Ohio Department of Public Safety was investigating WIESER"S operation of an illegal gambling business from WIESER"S business location known BILL'S OPEN DOOR. On about January 28, 2010, agents with the Ohio Department of Public Safety executed a state search warrant at BILL'S OPEN DOOR . . . . The execution of the search warrant resulted in the seizure of $1,111,120,00 and $156,071.00 in U.S. currency located within two safes from the second floor area of the premises known as BILL'S S OPEN DOOR. An additional $62,743.65 in U.S. currency was discovered and seized. Approximately $1,500.00 of

6

> the $62,743.65 was found within the bar area.  The remainder of the $62,743.65 as found in what appeared to be the business office."

It is undisputed that the State of Ohio actually seized the defendant funds on January 27, 2010.  It is equally undisputed that there were actually two state search warrants, not one, executed that day.  The scope of the original search warrant was limited to the bar area on the first floor.  A second search warrant was obtained after the first was executed that allowed the search of the upstairs.  All of the defendant funds were found upstairs as a result of the execution of the second search warrant with the exception of about $1,500.00 seized in the bar.

The U.S. Internal Revenue Service ("IRS") seized the previously seized funds from the State of Ohio Department of Public Safety on March 8, 2010 for federal forfeiture.  Claimants ask the Court to take judicial notice of the public document published as U.S. Department of Justice policy, *Guide to Equitable Sharing for State and Local Law Enforcement Agencies* (2009), at page 12, that in this "adoptive forfeiture," the State of Ohio will receive 80% of any forfeited funds.

The IRS admits in the Complaint that it got all of its information about alleged state gambling violations in the bar that could serve as the foundation for a federal gambling felony under 18 U.S.C. § 1955 and the proposed civil forfeiture of the defendant funds under 18 U.S.C. § 1955(d) from the Ohio Department of Public Safety.

Claimants ask the Court to take judicial notice of the public records of the Ohio Liquor Commission showing administrative citations arising from January 27, 2010 raids and searches of 17 bars in the Middletown-Trenton area by the Ohio Department of Public Safety, including Bill's Open Door from which the Defendant property was seized.

Mike Wieser and Bill's Open Door were cited for gambling related violations arising from the Ohio Department of Public Safety undercover investigation about machines in the bar on November 9, 2009, December 3, 2009, and January 27, 2009.

On March 1, 2012, in response to a motion to dismiss, the State of Ohio Liquor Control Commission dismissed all of the administrative citation cases against Mike Wieser and Bill's Open Door arising from the undercover investigation and searches and seizures at the bar, finding, "there is insufficient evidence to show that the investigation in these cases was in fact conducted under an express order of the executive director of the Investigative Unit, as required under Rule 61(B)."

Claimants also ask the Court to take judicial notice of the public records of the Ohio Liquor commission of the other cases arising from the Ohio Department of Public Safety raids on bars on January 27, 2010.  Motions to dismiss on those grounds were also granted and seized machines and property were returned.

There is no dispute that neither the State of Ohio nor the United States has returned the seized machines or the seized funds to Mike Wieser.

There is no dispute that the United States has not undertaken any federal gambling criminal investigation of any other raided bars or their owners, nor has the United States undertaken any forfeiture action against funds seized from them.

The law relevant to the case

The Sixth Circuit requires a trial court considering an allegation that the government has violated his Fifth Amendment due process rights by delaying the forfeiture process to balance "the interests of the claimant against those of the government." *United States v. Salti*, 579 F.3d

656 (6th Cir. 2009) (alleged unreasonable delay in a criminal forfeiture action). The Sixth Circuit said in *Salti*, at 672:

> *Barker v. Wingo*, 407 U.S. 514 (1972) "provides the framework that we use to determine when the government's delay in bringing a judicial forfeiture action violates the Fifth Amendment right against deprivation of property without due process." *United States v. Ninety Three Firearms*, 330 F.3d 414, 424 (6th Cir. 2003) (citing *United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 564, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983)). There are four factors to consider: "the length of the delay, the reason for the delay, the claimant's assertion of his right, and the prejudice to the claimant." *Id.* at 424-25; *see also id.* at 425 (observing that 'none of these factors is 'necessary' or 'sufficient,' but rather, they are to be used as guides in balancing the interests of the claimant against those of the government"). "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530, 92 S.Ct. 2182.

The Supreme Court in *$8,850* (reviewing due process in the filing of a civil forfeiture action 18 months after seizure of cash) said, at 565:

> In applying the *Barker* balancing test to this situation, the overarching factor is the length of the delay. As we said in *Barker*, the length of the delay "is to some extent a triggering mechanism." Little can be said on when a delay becomes presumptively improper, for the determination necessarily depends on the facts of the particular case. Our inquiry is a constitutional one of due process; we are not establishing a statute of limitations. Obviously, short delays – of perhaps a month or so – need less justification than longer delays. We regard the delay here – some 18 months – as quite significant. Being deprived of this substantial sum of money for a year and a half is undoubtedly a substantial burden.

The Supreme Court found, at 569, that the delay was "justified by the Government's diligent efforts in processing the petition for mitigation or remission and in pursuing related criminal proceedings."

9

The United States filed the Complaint in this civil forfeiture action seven months after seizure of the Defendant property.  Thereafter, the United States obtained a stay of this action to conduct a criminal gambling investigation as set forth in the Complaint.

A total of three years and 10 months have passed since the seizure of the Defendant property.

The delay of three years and 10 months is presumptively prejudicial and warrants the hearing requiring the United States to demonstrate reasonableness.

Because the United States' Status Reports to the Court have been sealed, Claimants do not know what facts, if any, the United States told the Court to demonstrate that it was "diligently pursuing related criminal proceedings" as the Supreme Court called for in *$8,850*. Claimants do not know whether the United States merely made a bare assertion that it was doing so.

Claimants respectfully request that the Court order the Status Reports unsealed for purposes of their inspection by Claimants before the hearing.

Claimants respectfully ask to be able to submit a supplemental brief on this due process claim at the time of the hearing once the full facts about the reasonableness or unreasonableness of the delay have been elicited.

Here is the substance of what Claimants ask the Court to inquire about in the hearing they request on this motion.

Counsel for Claimants had conversations with government attorneys starting in May 2012 to attempt to resolve the investigation and forfeiture.  Counsel for Claimants through 2012 and 2013 made efforts to push the government to complete the criminal investigation that was delaying this civil forfeiture action.

10

It was apparent to Claimants' counsel from statements by Counsel for the United States and federal agents that, until October 2013, the government's criminal investigation was into the crimes alleged in the Complaint, violations of the federal gambling statute 18 U.S.C. § 1955 based on violations of Ohio law relating to alleged illegal gambling on machines in Bill's Open Door. These Ohio gambling violations were the basis of the undercover investigation at Bill's Open Door by the Ohio Department of Public Safety in late 2009 and early 2010 and their seizure of the Defendant property on January 27, 2010.

However, almost three months after the Court held a conference on the status of this case, on about October 16, 2013, for the first time since the Defendant property was seized in 2010, the United States announced that it had brought into the investigation counsel and investigators from the Ohio Attorney General's office and an agent from the IRS Exempt Organizations Unit and had changed the focus of its investigation to possible mail fraud and wire fraud violations. The United States said that it was now looking into the operations of the exempt 501(c)(4) fraternal organization, Fraternal Order of Orioles 193, and the exempt 501(c)(3) charitable organization, MONEY, INC., for possible irregularities in their operations as exempt organizations speculating that there might be a conspiracy to defraud taxing authorities which could be the basis for forfeiture of the seized funds.

The Complaint filed in August 2010 clearly states that Mike Wieser was involved in the operation of these two exempt organizations. Amazingly, more than three years passed after the Complaint was filed in this case before the United States started investigating a whole new theory on which to base forfeiture of the defendant property unrelated to machine gambling. And equally amazing, for the first time after more than three years, the United States brought the

11

Ohio Attorney General's office into a federal gambling investigation that was based on state gambling violations.

Counsel for the United States have suggested to Claimants' counsel that this new investigation may be completed in spring 2014, more than four years after the seizure of the Defendant property.

And the United States has yet to provide the spreadsheets showing the alleged income from machines they agreed to provide in May 2012, which counsel for Claimants has repeatedly requested from the United States after that agreement.

Claimants have already been prejudiced.  One witness pertinent to the charitable contributions of MONEY, INC. has died; another witness has become seriously ill.  Memories have faded, documents required to be retained by the State of Ohio law for only three years may not be available.  The delay alone is presumptively prejudicial to Claimants' ability to defend their claims to the Defendant property, and there is other prejudice as well.

The United States' lack of diligence in concluding the parallel criminal investigation is unreasonable, unconscionable, unfairly prejudicial, and unconstitutional, a deprivation of Claimants' Fifth Amendment due process rights.

Conclusion

Claimants respectfully request that the Court:

1.      Unseal the United States' Status Reports for purposes of their review by Claimants' counsel prior to hearing; and

2.      Conduct a hearing at which the United States will have the burden of demonstrating to the Court that its delay was reasonable and not a violation of Claimants' Fifth Amendment due process rights; and

3. Allow Claimants to file a supplemental brief on the delay issue; and

4. Dismiss the Complaint with prejudice for violation of Claimants' Fifth Amendment due process rights through delay, either standing alone or in combination with the other grounds for dismissal previously argued; and

5. Grant Claimants judgment on the pleadings; and

6. Order the United States to return the Defendant property to Claimants forthwith.

Respectfully submitted,

/s/ *Kathleen Brinkman*
Kathleen Brinkman, Esq. (0016269)
Porter Wright Morris & Arthur LLP
250 E. Fifth Street, Suite 2200
Cincinnati, Ohio 45202
Phone: (513) 369-4258
Fax: (513) 421-0991
Email: kbrinkman@porterwright.com
Trial Attorney for Claimants

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served electronically via ECF upon the following:

Pamela M. Stanek          pamela.stanek@usdoj.gov

/s/ *Kathleen Brinkman*
Kathleen Brinkman, Esq. (0016269)
Trial Attorney for Claimants